**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
FRANK HUMEL, et al.,

                        Plaintiffs,                **MEMORANDUM**
                                                       **AND ORDER**
      - against -

                                                       CV 03-0621 (JO)

TOWN OF EAST HAMPTON, et al.,
                        Defendants.
----------------------------------------------------------X

**JAMES ORENSTEIN, Magistrate Judge:**

       On June 3, 2002, plaintiff Frank Humel ("Humel") took his position in right center field in a recreational baseball game organized by the defendant East Hampton Men's Slow Pitch League (the "League") at Terry King Park (the "King ballpark"), a site owned by the defendant Town of East Hampton (the "Town"). Docket Entry ("DE") 25 at 2-3. A batter put the ball in play, and Humel sought to field it. Like storied predecessors both real and fictional, Humel would not let the outfield wall stand in the way of his pursuit; but the wall stood nonetheless, as walls are wont to do in such circumstances.[1] When the two met, Humel injured his ankle. He and his wife Alison Humel thereafter sued both the Town and the League for their alleged negligence in inspecting and maintaining the field of play. Both defendants now seek summary judgment. For the reasons set forth below, I conclude that the Humels may proceed against the Town on their negligence claim and seek to prove that the Town actually created the playing field's allegedly dangerous condition. I therefore deny the Town's motion for summary judgment. However, because the Humels lack any viable theory of liability against the League, I grant its request for similar relief.

---

[1] *See* Bernard Malamud, *The Natural* 82 (Noonday Press 1991) (1952) (describing the demise of the fictional Bump Bailey); David Hinckley, *Pete Reiser*, N.Y. Daily News, Sept. 16, 2003, at 35 (recounting the exploits of Brooklyn Dodgers outfielder "Pistol Pete" Reiser).

I. <u>Background</u>

The parties filed all of their submissions on the motions for summary judgment as DE 22. Those submissions included the following documents:

– Notice of Motion [by the Town] dated July 29, 2004;

– Memorandum of Law [in support of the Town's motion] dated July 29, 2004 ("Town Memo.");

– Affirmation In Support [of the Town's motion] by Scott G. Christesen, dated July 29, 2004 ("Town Aff."), along with Exhibits A-K (each referred to as "Town Ex. _");

– Notice of Cross-Motion [by the League] dated July 30, 2004;

– Affirmation [in support of the League's cross-motion] by Eric S. Hechler, dated July 30, 2004 ("League Aff."), along with Exhibits A-B (each referred to as "League Ex. _");[2]

– Plaintiff's Memorandum of Law [in opposition to the Town's motion] dated August 27, 2004;

– Affirmation in Opposition [to the Town's motion] by Robert J. Camera dated August 27, 2004 ("Camera Aff. I"), along with Exhibits A (Affidavit of Frank Humel, Jr, referred to herein as "Humel Aff.") and Exhibits B-C (each referred to as "Camera Aff. I Ex. _");

– Affirmation in Opposition [to the League's cross-motion] by Robert J. Camera dated August 27, 2004 ("Camera Aff. II");

– Response to "Factual Presentation of Defendant, Town of East Hampton, In Accordance With Local Rule 56.1, undated ("Humel 56.1 Statement")

– [Reply] Memorandum of Law [in support of the Town's motion] dated September 9, 2004 ("Town Reply Memo.");

---

[2] The League seeks permission to rely on the Town's motion papers. League Aff. ¶ 4. I grant that application. To the extent that neither defendant has submitted a statement pursuant to Local Civil Rule 56.1, but instead rely on the "Factual Presentation" portion of Mr. Christesen's Affirmation, their motions are technically insufficient, but I will in any event discuss and decide each motion on its merits.

— Reply Affirmation [in support of the Town's motion] by Scott G. Christesen dated September 9, 2004; and

— Reply Affirmation [in support of the League's cross-motion] by Jennifer L. Culver dated September 10, 2004.

Humel was not a member of the League, but was instead invited by a co-worker who was a member to participate in the League's game on June 3, 2002. Although he had played recreational baseball games for ten years and participated in approximately forty prior softball games, Humel had never before played at the King ballpark, which is owned by the Town. When Humel, playing right center field, jumped against the outfield fence in an attempt to catch a ball, he landed with part of his right foot on the grass and another part on the fence's bottom horizontal rail. Humel claims that he injured his ankle because the latter was protruding into the field of play. *See* DE 1 ("Complaint") ¶ 8, 22-23; DE 25 (proposed joint pretrial order) at 2; Town Aff. ¶¶ 15-16, 20-21; Humel 56.1 Statement ¶¶ 15-16, 20-21.

II.  Discussion

    A.  The Applicable Law

        1.  Summary Judgment

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed R. Civ. P. 56(c)). In determining whether to grant summary judgment, a court is confined to issue-finding, not issue-resolution. *Rasmussen v. Sigma Corp. of America*, 27 F. Supp.2d 388, 391 (E.D.N.Y. 1998) (citations omitted). A court does not "'weigh the evidence and resolve the factual issues'"

3

but instead "'determine[s] as a threshold matter whether there are genuine unresolved issues of material fact to be tried.'" *Owens v. New York City Hous. Auth.*, 934 F.2d 405, 408 (2d Cir. 1991) (quoting *Gibson v. Am. Broad. Cos.*, 892 F.2d 1128, 1132 (2d Cir. 1989)); *see* Fed. R. Civ. P. 56(c). A fact is material if it "'might affect the outcome of the suit under the governing law.'" *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue is presented if "'the evidence is such that a reasonable jury could return a verdict for the non[-]moving party.'" *Id*. In assessing the evidence, all factual inferences are to be resolved in favor of the non-movant. *Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1315 (Fed. Cir. 1999).

2. Choice Of Law

The court's jurisdiction over this case arises from the parties' diversity of citizenship rather than on any claim predicated on federal law. As a result, I look to the choice of law rules of the forum state of New York to determine which jurisdiction's substantive law to apply. *HSA Residential Mortgage Services of Texas v. Casuccio*, 350 F. Supp. 2d 352, 361-62 (E.D.N.Y. 2003) (citations omitted). I need not engage in such analysis because there appears to be no dispute that the case is controlled by the substantive law of New York, where all the events at issue occurred.

B. The Town's Motion

The Town asserts that it is entitled to summary judgment for two reasons. First, it argues that the Humels' claims are barred by the doctrine of assumption of risk. Town Memo. at 3-10. Second, it contends that the record cannot support a *prima facie* claim of negligence. Town Memo. at 10-14. I address each in turn below.

4

1. <u>Assumption Of Risk</u>

The assumption of risk doctrine relieves "an owner or operator of a sporting venue from liability for inherent risks of engaging in a sport ... when a consenting participant is aware of the risks; has an appreciation of the nature of the risks; and voluntarily assumes the risks." *Morgan v. State of New York*, 90 N.Y.2d 471, 484 (1997) (citation omitted). However, "a premises owner continues to owe 'a duty to exercise care to make the conditions as safe as they appear to be.'" *Id.* (quoting *Turcotte v. Fell*, 68 N.Y.2d 432, 439 (1986)). The doctrine does not apply to injuries caused by concealed or unreasonably increased risks. *Id*. at 485.

Thus, the Town's reliance on the assumption of risk doctrine begs the question of whether the condition that allegedly cause Humel's injury – a fence rail protruding into the field of play – is a risk normally associated with participating in a softball game or instead constituted a unique risk that "'created a dangerous condition over and above the usual dangers that are inherent in the sport.'" *Id.* (citations omitted). Further, for the doctrine to defeat Humel's claim, he must have had knowledge and awareness of the risk; such awareness is "'assessed against the background of skill and experience of the particular plaintiffs.'" *Id.* at 486 (citations omitted).

The Town would have me decide in its favor because Humel was injured as the result of jumping against the outfield fence while attempting to make a play and because the risk of injury in such circumstances is inherent in the game. Town Memo. at 6. The Humels do not agree: they contend that the cause of injury was a piece of railing protruding into the playing field and that the risk of such a condition is not inherent in a softball game. Humel Memo. at 13.

The circumstances here resemble those in *Siegel v. City of New York*, the companion case to *Morgan*. In *Siegel*, the plaintiff was injured during a game of indoor tennis when he tripped

over a torn net separating the tennis courts. The court acknowledged that "nets separating indoor tennis courts, such as the one at issue here, are inherently part of the playing and participation of the sport at such facilities .... But a torn or allegedly damaged or dangerous net ... is by its nature not automatically an inherent risk of a sport as a matter of law for summary judgment purposes." *Morgan*, 90 N.Y.2d at 488.

The Town mistakenly writes that the court in *Siegel* "correctly found that the net separating the tennis court was not an '"inherent part of the game' of tennis." Town Memo. at 7. To the contrary, the court clearly found the separating net to be an inherent part of indoor tennis – but just as clearly distinguished the circumstance of a defect in such a net. So too here: the risk of injury in colliding with the outfield wall may be inherent in a game of recreational softball,[3] but the risk of injury from collision with a broken wall is not.

Further, the evidence as to Humel's knowledge of the condition of the wall also bars summary judgment on the assumed risk theory. Although the New York courts have applied the doctrine to bar negligence claims for injuries resulting from field conditions, they have done so where the plaintiffs knew of the dangerous condition and nevertheless participated in the sporting event. *See*, *e.g.*, *Maddox v. City of New York*, 66 N.Y.2d 270 (1985) (barring negligence claim of a professional baseball player who prior to his injury had complained to a groundskeeper about dangerous field conditions ); *Pascucci v. Town of Oyster Bay*, 186 A.D.2d 725 (2d Dep't 1992) (ruling that plaintiff with prior knowledge of a light post in fair territory had assumed the risk of

---

[3] The Town takes pains to note that the outfield fence is itself within the field of play. *Id*. at 8 (citing Major League Baseball Official Rule § 2.00). There appears to be no dispute on the matter, although it is far from obvious that that question or any other in a case arising from an amateur softball game can or should be resolved by reference to the official rules of the Bigs.

collision). The Town, however, cites no evidence that establishes Humel's prior knowledge of the condition he claims caused his injury.

Finally, as noted above, incumbent on a defendant who would invoke the doctrine of assumed risk is the "'duty to exercise care to make the conditions as safe as they appear to be.'" *Morgan*, 90 N.Y.2d at 484 (quoting *Turcotte*, 68 N.Y.2d at 439). Whether the Town fulfilled that duty is a disputed question of material fact. The Humels assert that the Town created the dangerous condition by repairing the fence with plastic ties rather than with metal ties, and that by doing so it concealed a risk that might otherwise have been apparent. Humel Memo. at 2-5. The record reveals an evidentiary basis for that argument:

> – Humel testified, and later swore in an affidavit, that he saw the separated rail extending into the playing field a "split second" before his foot came in contact with it. Town Ex. E at 54, 56; Humel Aff. ¶ 4.
>
> – Immediately after his injury, Humel claims he "saw black plastic ties in the playing field." Humel Aff. ¶ 5. He adds that when he returned to the King ballpark a month after the accident, he saw the same black plastic ties connecting the lower rail to fence sections immediately surrounding where he was injured. *Id*.
>
> – Humel testified that he saw black plastic ties on the field, but could not remember where exactly they were in relation to the broken fence section. Town Ex. D at 56-57.
>
> – Carlos Grijalvo ("Grijalvo"), a seasonal groundskeeper at the King ballpark, testified that on one prior occasion he repaired the bottom railing of another section of the outfield fence with a black plastic tie. Camera Aff. at 15-16; Town Ex. H at 16-19. He further testified that his supervisor George Kausonoviac ("Kausonoviak") instructed him to use the black plastic ties to fix the fence surrounding the tennis court. Town Ex. H at 23.
>
> – Kausonoviac testified that he provided Grijalvo with the black plastic ties and that he had instructed him to use the ties to make repairs to Amagansett Youth Park, the park across the street from the King ballpark. Town Ex. G. at 42-44.

7

– Several photographs of the fence at the King ballpark appear to show repairs were made to other lower railings in the park using black plastic ties. *See id*.; Town Ex. J.

If the Humels succeed in proving sufficient facts to support their theory of concealment, their recovery cannot be barred by the assumption of risk doctrine. To be sure, there is evidence upon which the Town can rely to argue that even if black plastic ties were used to repair other areas, they were not used in the area where Humel was injured, and that in fact the evidence does not support the inference that there was anything there that needed repair. Such arguments must be made at trial; they cannot suffice on this motion for summary judgment.

        2.       *Prima Facie* Evidence Of Negligence

To establish a *prima facie* case against the Town, the Humels must demonstrate that the Town either created the condition that caused the injury, or that it had actual or constructive notice of it. *Gonzalez v. Wal-Mart Stores, Inc.*, 299 F. Supp.2d 188, 192 (S.D.N.Y. 2004) (citations omitted). The Town argues that the record is insufficient to support either theory. The Humels disagree as to both: they claim that the Town created the dangerous condition by repairing the fence with plastic ties rather than metal ones, and they contend that the Town had constructive notice of the fence's condition. Humel Memo. at 2-10.

        a.       Creation Of The Dangerous Condition

To find that the Town created the dangerous condition that caused Humel's injury, the plaintiffs must be able to show "some affirmative act" by the Town that led to the creation of the condition. *Gonzalez,* 299 F. Supp.2d at 192 (citing Fink v. Bd. of Educ., 117 A.D.2d 704 (2d Dep't 1986)). The Humels contend that the Town created the allegedly dangerous condition by using plastic ties to repair the fence rather than metal ones, thereby allowing the lower rail to

separate from the fence and extend into the field of play. Humel Memo. at 2-5. The Town claims that the record does not establish that there were any repairs at all, negligent or otherwise, to the part of the fence where the accident occurred. Town Memo. at 12. It further claims that nothing in the record shows that the lower rail was ever attached to the fence by means of plastic ties. Town Reply Memo. at 5. Based on the evidence in the record summarized in the preceding section, I disagree, and find that there is a disputed question of material fact as to whether the Town created the allegedly dangerous condition. I therefore deny the Town's motion with respect to this part of the Humels' claim.

      b.      Actual And Constructive Notice

Although the Humels pay lip service to the concept of actual notice, they do nothing to bolster it. Specifically, although they refer in a point heading in their brief to the existence of "triable issues of fact" as to whether the Town had actual notice, Humel Memo. at 5, they do not support that conclusory assertion in the text. I therefore turn to constructive notice.

"'To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it.'" *Gonzalez*, 299 F. Supp.2d 188, 192-93 (quoting *Gordon v. Am. Museum of Natural History*, 67 N.Y.2d 836 (1986)). "In constructive notice cases, the plaintiff must prove not simply that the defendant was generally aware of the existence of the dangerous condition, but that the defendant had notice of the '"particular condition"' at issue." *Taylor*, 121 F.3d at 90 (citations omitted).

Although Humel believes he saw the lower rail separated from the fence and extending into the playing field a "split-second" before he landed on it, *see* Town Ex. E at 54-56; Humel

9

Aff. ¶ 4, the plaintiffs have no other evidence showing that the allegedly dangerous condition existed any earlier. Indeed, Humel testified that he did *not* see the separated rail in the field prior to jumping to catch the ball, Humel Aff. ¶ 9. There is thus no evidence on which a jury could base an inference that the rail was separated from the fence for a sufficient period of time before Humel's injury to permit the Town's employees to discover and repair the problem.

It is true that the Humels can seek to establish constructive notice under New York law by showing that the Town had actual notice of a recurring condition. *See Chianese v. Meier*, 98 N.Y.2d 270, 278-79 (2002) (history of complaints about broken door locks sufficient to establish constructive notice that the door lock was broken on the day of plaintiff's injury); *Goddard v. Delta Airlines, Inc.*, 1997 WL 12022, *3-4 (E.D.N.Y. 1997) (evidence showing that defendants regularly had employees clean oil from tarmac held sufficient to show constructive notice of oil on the tarmac when plaintiff slipped). But reliance on such a theory would require the Humels to show recurrence of the particular condition that caused the injury. There is no such evidence here. Accordingly, the Humels' negligence claim survives the motion for summary judgment only to the extent that the plaintiffs can prove that the Town created the allegedly dangerous condition; the jury will not be instructed on a theory of actual or constructive notice.

### C. The League's Cross-Motion

To establish a *prima facie* case of negligence against the League under New York law, the Humels must show that the League owed them a duty of care, that the League breached that duty, and that there was "a reasonably close causal connection" between the breach and some resulting injury. *Integrated Waste Servs., Inc. v. Akzo Nobel Salt, Inc.*, 113 F.3d 296, 299 (2d Cir. 1997) (citing *Febesh v. Elcejay Inn Corp.,* 157 A.D.2d 102, 104 (1st Dep't 1990)). With

respect to the first two elements, the Humels claim that the League breached its duty to properly inspect and maintain the fence surrounding the softball field. Complaint ¶ 23. The League asserts otherwise, and argues that summary judgment is appropriate, because the record is uncontroverted that "it did not own, possess, occupy or control the Terry King Park ball field" and therefore had no such duty to inspect or maintain the fence. League Aff. ¶¶ 8, 11.

The League's characterization of the record is correct. First, the Town's ownership of the King ballpark is established: the Humels alleged it in their Complaint, ¶ 8, and the allegation is deemed admitted as a result of the Town's failure to respond to it in their Verified Answer, DE 30. *See* Fed. R. Civ. P. 8(d). Further, the parties have stipulated that the Town's "agents and employees ... were responsible for the inspection and repair of the fence surrounding Terry King Ball Field." DE 25 at 3. Third, the only record evidence regarding responsibility to inspect, maintain and repair the facilities at the King ballpark, including the fence, is that such responsibility was the Town's alone and that users of the field had no such duty. *See* League Aff. ¶ 10 (citing Town Exs. F-H (testimony by three Town employees that they were responsible for inspecting and maintaining the King ballpark)); Town Ex. G at 25 (testimony by Kausonoviac: "The ball field is open for anybody to use it."); League Aff. ¶ 9 (citing League Ex. B at 12-13 (testimony by League organizer Richard Schneider that the League had had no responsibility to inspect the field, and had never made repairs to "the fenced area around the ballpark"); Town Ex. F at 26-27 (testimony by Town official that one of his duties was to keep track of which individuals or groups had reserved the use of the King ballpark).

The record conclusively establishes that, contrary to the allegations in the Humels' Complaint, the League neither owned, maintained, managed, nor operated the King ballpark.

Complaint ¶¶ 15-16, 18-19. As a result, the only remaining question is whether the Humels can establish that the League "controlled" the King ballpark at the time of the alleged injury, *see* Complaint ¶ 17; Camera Aff. II at 3, to a degree that would support a claim of liability, or whether there is some other basis on which to hold the League responsible for the condition of the field.

The Humels are correct that under New York law, control of property "is sufficient to give rise to a duty to exercise reasonable care" that can support liability if the property is left in a dangerous condition. *Arsenault v. Regan Trust*, 263 A.D.2d 754, 754. (3d Dep't 1999) (defendant's control of property that she did not own established by her agreement to assume responsibility for its upkeep and maintenance in exchange for the right to receive all rental income). On the other hand, a right simply to use property is insufficient to create liability. *See Turrisi v. Ponderosa Inc.*, 179 A.D.2d 956, 958 (3rd Dep't 1992) (commercial lessor not liable for injuries resulting from dangerous condition in common area to which lessor could not limit access).

The Humels argue that there is a triable issue of fact as to whether the League had control over the field, and they have submitted a conclusory affidavit to that effect, Camera Affirmation II at 4-5, but they cite no evidence on which the issue could be decided in their favor. The evidence presented to me shows no more than that the League had the right to use the field for the duration of the softball game. That showing does not suffice to establish control, and therefore fails to create a basis on which to impose liability.

Even less compelling is the Humels' argument that the League had a duty to inspect the field prior to the start of the game pursuant to the rules of the Amateur Softball Association of

America ("ASAA"). Their argument to that effect rests on the unsupported speculation of their engineering expert:

> It is my understanding that most softball leagues abide by the rules of the [ASAA]. Section 2 of Rule 5 states: "The fitness of the ground shall be decided by the plate umpire." Section 1E of Rule 10 states: "The umpire should inspect the playing field boundaries and equipment and clarify all ground rules for representatives of both teams." ... Based on my understanding of the rules and my experience with youth and amateur athletics, it is the responsibility of the umpires to inspect and make sure the field is safe to play on."

Camera Aff. II at 5. On this unsteady foundation the Humels build the following argument: the League provides umpires for its games, and therefore those umpires had a duty to inspect the condition of the field, including the fence, prior to the start of the game; the umpires' assumed failure to inspect thus constitutes the alleged breach of the League's duty of care.

The argument is creative, but as it has no factual support in the record it cannot suffice to withstand summary judgment. There is no evidence that the League adopted the ASAA rules. Nor is there any evidence that the Humels' engineering expert is in any way qualified to opine on the rules of amateur softball (whichever set of rules may have governed the League's games) or on the way those rules might serve to create a duty of care.

There is no material question of fact concerning whether the League owed a duty related to the King ballpark; all of the evidence in the record indicates that it did not. Because a jury could not reasonably find the League responsible for Humel's injury, the League is entitled to summary judgment in its favor.

III.     Conclusion

For the reasons set forth above, the Town's motion for summary judgment is denied; the Humels may proceed to trial on the theory that the Town created the allegedly dangerous condition. The League's cross-motion for summary judgment is granted.

**SO ORDERED.**

Dated:  Central Islip, New York
        September 27, 2005

                                            /s/ James Orenstein
                                            JAMES ORENSTEIN
                                            U.S. Magistrate Judge